# EXHIBIT 6

This Forbearance Agreement ("Agreement") is made and entered into effective as of April 30, 2020, by and among CRESTMARK, a division of METABANK, NATIONAL ASSOCIATION, as successor to CRESTMARK EQUIPMENT FINANCE, INC., d/b/a Allstate Capital ("Lender"); SIMON AUTOMOTIVE, LLC, a Michigan limited liability company ("Simon Automotive"); and SIMONXPRESS PIZZA, LLC, an Arizona limited liability company ("Simonxpress", or individually or collectively with Simon Automotive a "Borrower" or the "Borrowers" as the context requires); and SIMON STORES CORPORATION, a Michigan corporation; SE CORPORATION OF MICHIGAN, a Michigan corporation; SIMON ENTERPRISE INC., a _____ corporation; 643 TELEGRAPH, LLC, a Michigan limited liability company; PINCKNEY PETROLEUM, LLC, a Michigan limited liability company; CACTUS SHELL LLC, an Arizona limited liability company; SIMON LAND DEVELOPMENT GROUP, LLC, a Michigan limited liability company; and FAWZI SIMON, an individual (individually and collectively a "Guarantor").

**WHEREAS**, the finance relationship between Lender and Borrowers (the "Credit Loans") consists of, but is not limited to, the Equipment Finance Agreement #170763-VF000 dated as of September 7, 2017 with Simon Automotive (the "Simon Automotive EFA") and the Equipment Finance Agreement #180129-VF000 dated January 25, 2018 with Simon Express (the "Simonxpress EFA", or collectively with the Simon Automotive EFA, the "EFAs");

**WHEREAS**, capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the EFAs and ancillary documents, instruments and agreements executed in connection therewith (collectively referred to herein as the "Loan Documents"); and

**WHEREAS**, Borrowers have requested that Lender forbear from enforcement of its remedies under the Loan Documents to provide them additional time to pay down the amounts due under their respective Loan Documents and to otherwise restructure their business, and Lender is willing to grant Borrowers' request, but only in accordance with the terms and conditions of this Agreement.

**NOW THEREFORE,** in consideration of the above recitals of fact (which are deemed binding covenants of the parties) and the warranties, covenants and agreements between the parties hereinafter set forth, and in reliance thereon, the parties hereto agree as follows:

1. **Acknowledgment of Indebtedness.** Borrowers acknowledge and agree that the unpaid balances due and owing to Lender under each EFAs as of April 15, 2020 was as follows:

| | |
|---|---|
| Simon Automotive EFA: | $256,071.98 |
| Simonxpress EFA: | $204,771.09 |

The above amounts includes accrued interest but not costs and attorney fees and is hereinafter referred to as the "Indebtedness". Certain fees and costs associated with the Credit Loans including attorney fees, may continue to be incurred by Lender, the reimbursement of which shall

be paid by Borrowers to Lender and added to the Indebtedness due and owing to Lender as set forth and determined pursuant to the Loan Documents.

2. **Acknowledgment of Default.** Each of the Borrowers hereby acknowledges and agrees that it is in Default because each Borrower has failed to make certain Finance Payments due under the EFAs within 10 days of their respective due dates (collectively, the "Existing Defaults") and that, pursuant to the terms of the Loan Documents, the Indebtedness is immediately due and payable in full, and that absent the forbearance provided in this Agreement, Lender would be entitled to immediately enforce all of its rights and remedies under the Loan Documents and applicable law. Each of the Borrowers further acknowledges and agrees that this Agreement does not waive the Lender's rights as a result of the Existing Defaults but only establishes the terms and conditions of the Lender's forbearance.

3. **Waiver of Claims; Release.** Borrowers and Guarantors hereby acknowledge and agree that Borrowers and Guarantors do not have, nor past or present circumstances will Borrowers or Guarantors have, any claim offset, damages, injury, suit or any other matter, the effect of which would be to diminish the amount owing to Lender under the Loan Documents which would impair in any manner, the Lender's rights with respect to the Credit Loans or the collateral security therefore. In consideration of the Lender entering into this Agreement, Borrowers, Guarantors, and each of their respective successors, assigns, parents, subsidiaries, affiliates, heirs, and agents, as applicable, both present and former, jointly and severally, hereby waive and release Lender, its officers, employees, directors, shareholders, agents, affiliates, parents, successors, assigns, predecessors, heirs, executors and attorneys (collectively, "Lender Affiliates") of and from any and all claims, suits and damages of any and every kind, known or unknown, legal or equitable, which Borrowers and/or Guarantors have against the Lender or Lender Affiliates from the date of each Borrowers' and/or Guarantors' first contact with the Lender or Lender Affiliates to the date of this Agreement.

4. **Conditions to Forbearance and Enforceability.** The forbearance granted by Lender under this Agreement and the enforceability of this Agreement against Lender shall become effective only upon performance of all of the following conditions precedent:

A. Borrower shall have executed this Agreement and any other agreements required or requested by Lender hereunder, by 5:00 p.m. EST on April 30, 2020 (the "Deadline").

B. Except for Existing Defaults, no event of Default shall have occurred and be continuing as of the date hereof.

C. Lender shall have received certified copies of resolutions of the Borrowers and Guarantors reaffirming, ratifying, authorizing and approving the execution and delivery of this Agreement, and any other agreement in connection therewith and the consummation of the transactions contemplated by this Agreement and all other documents or instruments to be executed and delivered in conjunction herewith, by the Deadline.

5. **Forbearance Provisions**

4827182.v6

A. **Payments.** On or prior to the Deadline, Borrowers shall pay to the Lender as applicable:

    i)    $3,715.30, which is one-half of the current monthly April Finance Payments due under the Simon Automotive EFA;

    ii)    $2,518.71, which is one-half of the current monthly April Finance Payments due under the Simonxpress EFA; and

    iii)    Starting in May of 2020, all monthly payments Finance Payments due under the EFAs will be at the normal contractual amounts when due.

All past due Finance Payments comprising the Existing Defaults and the other half of the April Finance Payments not made under subparagraphs i) and ii) above will be moved to the end of the Forbearance Period (as defined below);

B. **Lender Attorney Fees and Costs.** In addition to all amounts required by Section 5 of this Agreement, on or prior to the Deadline, each of the Borrowers shall pay Lender the sum of $2,500 each to be applied towards Lender's attorney fees and costs incurred with respect to the Credit Loans.

C. **Reporting Requirements.** In addition to any reports and/or information required by the Loan Documents, which must be provided timely, or that the Lender may hereafter request, each of the Borrowers shall provide the Lender within three (3) day of receipt: (i) copies of written notices of default received from other creditors; if any; and (ii) notice of the occurrence of any default or event of default, or any event with the lapse of time, service of notice, or both, which would constitute an event of default or default under this Agreement or the Loan Documents.

D. **Accounts.** Commencing three (3) business days of the Deadline, going forward each of the Borrowers shall transfer, segregate and direct all of its cash, revenue and receipts, including but not limited to receipts from the franchisor Hungry Howie's Pizza & Subs, Inc. ("HHP"), to a bank account disclosed to Lender (the "Bank Account") from which all amounts owing under its Loan Documents will be paid monthly via ACH going forward pursuant to the ACH Agreements attached to this Agreement, effective for all payments due on or after May 1, 2020. Borrowers shall provide Lender with a copy of each monthly statement for each Bank Account within three (3) business days of its receipt of the same. A Borrower shall not change the Bank Account without giving Lender prior advance written notice and providing Lender a new ACH Agreement. There shall be no commingling between the Borrowers' bank accounts with the bank accounts of the other Borrower or any affiliate of either of the Borrowers. Each of the Borrowers shall pay their own expenses with their own funds and shall not pay the expenses of the other Borrower or any affiliate of the Borrowers.

loan, and shall timely provide Lender with the status of each SBA PPP loan application and funding.

        F.    **Debt Schedules**.  Within seven (7) days of the Deadline, each of the Borrowers shall produce a detailed debt/liability/ payable/merchant cash advance schedule with a list of all creditors, including all amounts due and the due dates.

        G.    **Financial Statements**.  Within seven (7) days of the Deadline, each of the Borrowers shall provide to Lender their current financial statements, and for Simonxpress noting the financial performance by each HHP location.

        H.    **Merchant Lenders**.  Each of the Borrowers agrees to promptly phase out all merchant lenders making credit card receivable advances.

        I.    **Consultant**.  Each Borrower must retain a business consultant (the "Consultant") acceptable to Lender in its sole reasonable discretion at the Borrower's expense by the close of five (5) business days after the Deadline.  The Consultant shall be required to issue verbal and written reports to Lender.  The Consultant shall make recommendations to each of the Borrowers that the Consultant deems necessary for such Borrower to have a viable business and shall be allowed to consult with HHP.  Without limiting the foregoing, the Consultant must be more than just an accountant that can prepare financial statements.  The Consultant must be an independent third party that can, among other things, prepare the Cash Flow Budgets discussed in the paragraph below and can make the recommendations discussed in this paragraph.

        J.    **Cash Flow Budgets**.  Each Borrower, with the assistance of the Consultant, shall prepare and submit to Lender rolling, 13-week cash flow budgets including projections and statements of sources and uses of cash for the payment of expenses (the "Cash Flow Budgets") evidencing that the Borrower has a viable business.  The first Cash Flow Budget will be due by May 15, 2020, and each subsequent Cash Flow Budget will be due by Friday of each week thereafter and will show the actual expense and revenue results compared to the projected expenses and revenues for the week ending the prior Friday. The Borrower shall only pay those expenses covered by and in the amount set forth in the Cash Flow Budgets, and if requested by Lender in its reasonable discretion the Consultant may take control of the Borrower's funds to ensure compliance with the provisions of this Agreement, including but not limited to this paragraph.

      6.    **Reaffirmation of Covenants and Warranties.**  Each of the Borrowers hereby reaffirms and ratifies, as of the date of this Agreement that all covenants, warranties and representations contained in all Loan Documents are true today and are expressly incorporated into this Agreement.

      7.    **Affirmative and Negative Covenants.**  Each of the Borrowers hereby further acknowledges, reaffirms, represents and warrant to Lender, as applicable, that, from the date hereof and until Indebtedness is paid in full, Borrower shall comply with the following requirements:

4827182.v6

It will inform Lender promptly and in writing, of any judgment entered or of any debt collection activity commenced, against it, including any proceedings by any other lender and of any other occurrence which may materially adversely affect its financial condition, and will furnish any other information which Lender may reasonably require regarding its affairs, and will also permit Lender, or its agents, to examine at any reasonable time, any of its books and/or records, and take memoranda and extracts therefrom;

        B.      Lender's costs of collection, including reasonable attorney, and/or other fees incurred at any time in connection with the effectuation and enforcement of Lender's rights hereunder, shall be added to the principal balance of the Credit Loans until paid; and

        C.      It shall not pay or declare any dividends on stock, repay any loans to it from stockholders, officers, directors, employees, or pay any fringe benefits or salaries in excess of current levels, make any loans or advances or pay any bonuses or other increments to any of its officers or employees (or any of their shareholders, officers or employees).

      8.    **Lender's Forbearance.** In consideration of the agreements and representations of Borrowers set forth herein, Lender agrees that so long as Borrower does not default under the terms of the Loan Documents other than the Existing Defaults or breach any material term or provision of this Agreement, Lender will forbear from proceeding with exercising its default remedies thereunder until August 1, 2020 ("Forbearance Period"). Lender may in its sole discretion extend the Forbearance Period.

      9.    **Default and Remedies.** Borrower understands and agrees that if Borrower breaches, fails to comply with or fails to fulfill any one or more of the material terms, covenants, warranties and other provisions of this Agreement or the Loan Documents, or if any statement, representation or information made or furnished by or on behalf of Borrower in connection with this Agreement or otherwise with respect to the Credit Loans shall be false or materially misleading, Borrower shall be in default of this Agreement and such default(s) shall result in the termination of the Forbearance Period and shall entitle Lender to exercise any and all default remedies available to it under this Agreement and/or the Loan Documents, at law and in equity, and otherwise as permitted with respect to the Credit Loans, the Indebtedness and the collateral security therefore, without further notice to Borrower. Time is of the essence.

      10.    **No Agreement to Extend Forbearance; No Waiver.** Borrower acknowledges, understands and agrees that there is no agreement, understanding or implication upon which Lender is expected to extend the Forbearance Period. Unless the Forbearance Period is extended or renewed by Lender in its sole and absolute discretion, all Indebtedness due under the Loan Documents shall be immediately due and payable without any demand by Lender. It is further understood and agreed that no delay or failure of Lender in exercising any right, remedy, power or privilege under this Agreement or the Loan Documents shall affect that right, remedy, power or privilege, nor shall any single or partial exercise preclude the exercise of any other right, remedy, power or privilege of Lender's. No delay or failure of Lender to demand strict adherence to the terms of this Agreement or the Loan Documents shall be deemed to constitute a course of conduct inconsistent with the Lender's right at any time, before or after any default, to prospectively demand strict adherence to the terms of this Agreement or the Loan Documents. Borrower's

4827182.v6

time is of the essence of this Agreement.

11. **Receivers**. Upon the occurrence of a default under this Forbearance Agreement and/or the Credit Loan, each Borrower and Guarantors consent and agree that the Lender shall be entitled to the immediate appointment of a receiver or receivers for the business of each Borrower and Guarantors.

12. **Notices**. All notices shall be in writing and the sending of such notice shall be sufficient in all respects if sent by first class mail with postage fully prepaid, and addressed to the parties at the addresses listed hereinabove. All notices shall be effective when sent, whether or not received.

13. **Existing Loan Documents**. Borrower understands and agrees that except as expressly modified and/or provided for herein or any documents executed herewith to the contrary, all other terms and provisions of the Loan Documents shall remain in full force and effect.

14. **Reaffirmation of Guarantees**. Guarantors consent to this Agreement and ratify and confirm their obligations under the Guarantees and agree that the Guarantees shall remain in full force and effect with respect to the Credit Loans and each and all of the Loan Documents. Guarantors acknowledge and agree that this reaffirmation does not amend or modify any of the terms and conditions of the Guarantees, and Lender may continue to rely on the Guarantees without qualification. Notwithstanding anything contained herein to the contrary, Borrowers, Guarantors and Lender acknowledge and agree that any Guarantor's refusal to execute this Agreement shall not constitute any release whatsoever from such Guarantor's obligations under any existing Guaranty, and Lender may continue to rely on such Guaranty without qualification.

15. **Qualified Dispositions in Trust Act**. With respect to the Qualified Dispositions in Trust Act enacted in the State of Michigan, being Act No. 330, Public Acts of 2016, MCL 700.1041 et seq. (the "Act"), each of the Borrowers and Guarantors each represent and agree with Lender as follows:

        A.     As of the date of this Agreement, Borrower and Guarantors each represent that they have not made any qualified dispositions of any property to a trust established under the Act.

        B.     Borrower and Guarantors agree that they will not make or attempt any qualified dispositions or other distribution or transfers of Borrower's and/or Guarantors' property into a trust established under the Act without obtaining the prior written consent of Lender. Lender's consent to any such requested distribution shall be at the sole and absolute discretion of Lender. Any consent provided by Lender described in this paragraph (b) shall only be applicable for property identified and disclosed in writing by Borrower and/or Guarantors, as the case may be, to Lender. Lender's consent shall not be applicable to: a) any other property of Borrower and/or Guarantors which is not disclosed to Lender in writing as part of the qualified

property under the Act previously attempted or attempted in the future by Borrower and/or Guarantors.

C.     Borrower and Guarantors acknowledge and agree with Lender that if Lender does not provide its consent to Borrower and/or Guarantors, as the case may be, for a qualified or other disposition under the Act, then such disposition by Borrower and/or Guarantors shall not be valid under the Act with respect to Lender.

D.     Borrower and Guarantors agree that they have an obligation to immediately disclose in writing to Lender any qualified dispositions or attempted qualified dispositions to a trust under the Act.

E.     Borrower and Guarantors agree that this agreement constitutes a written agreement described in the Act between a transferor and a creditor providing for and establishing the obligations of a transferor as set out in Section 11 of the Act.

F.     Borrower's and/or Guarantors' failure to comply with any provisions of this Agreement shall constitute an Event of Default under the Loan Agreement and Loan Documents, and upon such an Event of Default, Lender shall have those rights set forth in the Loan Agreement and Loan Documents.

G.     The terms used in this Section shall have the meaning ascribed to them in the Act, unless otherwise defined herein.

16.     **Governing Law, Partial Illegality**. This Agreement shall be interpreted under the laws of the State of Michigan. Should any part, term or provision of this Agreement be adjudged illegal or in conflict with any law of the United States or State of Michigan, the validity of the remaining portion or portions of this Agreement shall not be affected.

17.     **No Marshaling.** Lender shall be under no obligation to marshal any assets in favor of Borrower or any other party against or in payment of any or all of the Indebtedness.

18.     **Waiver of Trial by Jury**. **EACH OF THE BORROWERS ACKNOWLEDGES THAT THE TIME AND EXPENSE REQUIRED FOR TRIAL BY JURY EXCEED THE TIME AND EXPENSE REQUIRED FOR A BENCH TRIAL, AND HEREBY WAIVES, TO THE EXTENT PERMITTED BY LAW, TRIAL BY JURY, AND WAIVES ANY BOND OR SURETY OR SECURITY UPON SUCH BOND WHICH MIGHT, BUT FOR THIS WAIVER, BE REQUIRED OF LENDER.**

19.     **Rights Cumulative.** All of Lender's rights and remedies under this Agreement and the Loan Documents are cumulative and nonexclusive.

**Invalidation of Payments**. Each of the Borrowers expressly agrees that to the extent that Lender receives any payment or benefit and such payment or benefit, or any part thereof, is subsequently invalidated, declared to be fraudulent or preferential, set aside or is required to be repaid to the trustee, receiver, or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or benefit, the Indebtedness, or any part thereof intended to be satisfied shall be revived and continued in full force and effect as if such payment or benefit had not been made and, further any such repayment by Lender to the extent that Lender did not directly receive a corresponding cash payment, shall be added to and become a part of the Indebtedness accruing interest at the highest rate applicable to any portion thereof, secured by the collateral and payable on demand.

21. **Additional Costs and Expenses After Default.** Borrower acknowledges and agrees that after an event of default, the Lender will incur additional fees, costs and expenses, including without limitations, field audits of the Lender's collateral, the professional fees of appraisers, accountants, lawyers, field engineers and other consultants, and the costs to the Lender of obtaining, verifying and/or updating property surveys, environmental laws reports, insurance coverages, tax searches, title reports and Uniform Commercial Code search fees, and Borrower agrees to pay all of said fees, costs and expenses incurred by the Lender, at the Lender's cost, and authorizes the Lender to charge any of Borrower's bank accounts as and when said fees, costs and expenses are incurred.

22. **Authority**. Each of the Borrowers hereby acknowledges that the person(s) executing this document on behalf of Borrower have authority to execute the Agreement and Borrower represents and warrants to Lender that this Agreement is a valid and binding Agreement of Borrower and enforceable in accordance with its terms.

23. **Miscellaneous.** Nothing contained in this Agreement, in any document executed between the parties hereto at any time, or otherwise, is intended nor shall same be construed to require Lender to loan or advance money additional to the existing Indebtedness expressly described in this Agreement.

**EACH OF THE BORROWERS FURTHER ACKNOWLEDGES, REAFFIRMS AND AGREES THAT BORROWER HAS AMPLE OPPORTUNITY TO REVIEW THIS FORBEARANCE AGREEMENT WITH LEGAL COUNSEL, AND ANY OTHER ADVISORS OF ITS CHOOSING, THAT BORROWER FULLY UNDERSTANDS THE MATTERS CONTAINED HEREIN AND BORROWER ACKNOWLEDGES AND AGREES THAT (i) EACH OF THE CONSENTS, WAIVERS AND RELEASES SET FORTH HEREIN WERE KNOWINGLY AND VOLUNTARILY MADE; (ii) THE OBLIGATIONS OF LENDER HEREUNDER SHALL BE STRICTLY CONSTRUED AND SHALL BE EXPRESSLY SUBJECT TO BORROWER'S COMPLIANCE IN ALL RESPECTS WITH THE TERMS AND CONDITIONS HEREBY SET FORTH; AND (iii) NO REPRESENTATIVES OF LENDER HAVE WAIVED OR MODIFIED ANY OF THE PROVISIONS OF THIS AGREEMENT AS OF THE DATE HEREOF AND NO SUCH WAIVER OR MODIFICATION FOLLOWING THE DATE HEREOF SHALL BE EFFECTIVE UNLESS MADE IN WRITING SIGNED BY LENDER.**

The undersigned hereby acknowledge and agree that the Loan Documents and this Agreement, together with any documents executed herewith, contain the entire agreement between them, that no other agreements, written or oral, express or implied, have been made or entered into by the parties. The undersigned also agree that this Agreement may be executed in counterparts, but that this Agreement may be modified or amended only by subsequent written agreements executed by all of the parties hereto.

Lender anticipates that discussions addressing the Indebtedness may take place in the future. During the course of such discussions, Lender and Borrower may touch upon and possibly reach a preliminary understanding on one or more issues prior to concluding negotiations. Notwithstanding this fact and absent an express written waiver by Lender, Borrower will not be bound by an agreement on any individual issue unless and until an agreement is reached on all issues and such agreement is reduced to writing and signed by a duly authorized officer of Lender.

**IN WITNESS WHEREOF**, the parties hereto have executed this Forbearance Agreement on the date above written.

**BORROWERS:**

SIMON AUTOMOTIVE, LLC,
a Michigan limited liability company

By: _____
        Fawzi Simon
Its:     Authorized Representative

SIMONXPRESS PIZZA, LLC,
an Arizona limited liability company

By: _____
        Fawzi Simon
Its:     Authorized Representative

**GUARANTORS:**

SIMON STORES CORPORATION,
a Michigan corporation

By: _____
        Fawzi Simon
Its:     Authorized Representative

4827182.v6

---

SE CORPORATION OF MICHIGAN,
a Michigan corporation

By: _____
Fawzi Simon
Its:   Authorized Representative

SIMON ENTERPRISE INC.,
a _____ corporation

By: _____
Fawzi Simon
Its:   Authorized Representative

643 TELEGRAPH, LLC,
a Michigan limited liability company

By: _____
Fawzi Simon
Its:   Authorized Representative

PINCKNEY PETROLEUM, LLC,
a Michigan limited liability company

By: _____
Fawzi Simon
Its:   Authorized Representative

CACTUS SHELL LLC,
an Arizona limited liability company

By: _____
Fawzi Simon
Its:   Authorized Representative

SIMON LAND DEVELOPMENT GROUP,
LLC, a Michigan limited liability company

By: _____
Fawzi Simon
Its:   Authorized Representative

_____
FAWZI R. SIMON, Individually

4827182.v6

**LENDER:**

CRESTMARK, a division of METABANK NATIONAL ASSOCIATION

By: _____
Scot Lund
Its: PRESIDENT CVP